**UNITED STATES ex rel. Harry SHANK, Appellant,**

v.

**COMMONWEALTH OF PENNSYLVANIA.**

**No. 71–1071.**

United States Court of Appeals, Third Circuit.

Submitted Jan. 3, 1972.

Decided June 1, 1972.

Harry Shank, pro se.

James D. Crawford, Deputy Dist. Atty., Philadelphia, Pa., for appellee.

Before HASTIE and MAX ROSENN, Circuit Judges and McCUNE, District Judge.

### OPINION OF THE COURT

McCUNE, District Judge.

Harry Shank has appealed an order denying his petition for writ of habeas corpus entered September 9, 1970, by the United States District Court for the Eastern District of Pennsylvania. Petitioner had filed a petition under the Pennsylvania Post-Conviction Hearing Act (19 P.S. § 1180–1 et seq.) on February 20, 1968, and had been granted a hearing on the allegations contained therein on June 3, 1968. On October 9, 1968, the Honorable Alexander F. Barbieri who had conducted the hearing denied the petition. Counsel, who had been appointed for petitioner prior to the hearing, appealed that order to the Superior Court of Pennsylvania which affirmed Judge Barbieri on June 3, 1969, and the Supreme Court of Pennsylvania on August 25, 1969, denied Petition for Allowance of Appeal.

Petitioner then filed his petition for writ of habeas corpus. The United

States District Court to which it was assigned held no hearing but decided the petition on the available record.

We need go no further than to decide whether petitioner should have had a hearing in the United States District Court on his petition for habeas corpus.

The Post-Conviction Hearing Act petition was filed almost ten years after petitioner was sentenced to a term of sixteen to forty years on guilty pleas to indictments charging four counts of armed robbery. (The sentences on each of the four counts of armed robbery were for four to ten years, thus the aggregate sentences of sixteen to forty years. The sentence on a count of carrying a concealed weapon was suspended.)

The question which confronted the hearing judge on the PCHA petition and the U. S. District Judge on the petition for writ of habeas corpus was whether the pleas were voluntarily and knowingly entered. The hearing judge held that they were so entered. The district judge, based upon a review of the record, agreed. The purpose of our review is to determine whether the court below abused its discretion when it omitted another hearing and found the pleas to have been voluntary and to have been knowingly entered.

█ A federal district court may, within its discretion, dismiss a petition for writ of habeas corpus without a hearing if petitioner was afforded a fair and adequate hearing in a state court and if the decision of the state court is fairly supported by the record, Townsend v. Sain, 372 U.S. 293, 313, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); United States ex rel. Lawson v. Cavell, 425 F.2d 1350 (3d Cir. 1970); 28 U.S.C.A. § 2254(d).

The main contention of petitioner was that his guilty plea was not voluntary because it was motivated by a coerced confession. In his petition he contended that he was persuaded to admit his guilt by police officers who took advantage of him while he was wounded and in pain and under sedation and in apprehension for himself and for his family. His petition avers that he was arrested in Harrisburg on March 28, 1958, about 10:00 o'clock at night and was shot and seriously wounded in attempting to escape. He was hospitalized forthwith and about three days later was taken by ambulance to Philadelphia for further hospitalization and surgery. On the trip he was accompanied by detectives to whom he made admissions. Obviously he did not have counsel at this time and he contends that his privilege against self-incrimination was violated, he was denied his right to competent counsel, his pleas were unlawfully induced and were not voluntarily or knowingly entered.

He contends that when he was called for trial his appointed counsel was incompetent, did not discuss the case with him, that no one explained to him that he had a right to trial by jury and that he was not told by anyone what the result of a plea might be except for a detective who promised him a sentence of five to ten years. He contends that when a public defender visited him in jail prior to trial and when he explained that he had confessed to the police, the public defender told him he had no choice but to plead guilty and that he thought that he had no choice. He contends that had he been properly treated and properly represented there would have been no confession and therefore no necessity to plead.

Petitioner also complained that he was arrested without a warrant and that he had no hearing in Harrisburg before his removal to Philadelphia and that he had no counsel during this time. The court below did not consider these allegations since his guilty plea would constitute a waiver of non-jurisdictional defects prior to the plea if his plea was voluntarily and knowingly made, United States v. Ptomey, 366 F.2d 759 (3d Cir. 1966).

Petitioner was represented by the Philadelphia Voluntary Defender but the record is clear that the particular public defender who represented defendant at his plea did not see the petitioner until

the morning of his plea although other representatives of that office had visited him in jail long before the date set for trial. The court below applied the presumption that the late appointment of trial counsel established a prima facie case that counsel was ineffective following United States ex rel. Mathis v. Rundle, 394 F.2d 748 (3d Cir. 1968).[1] The court below decided however from the evidence produced at the post-conviction hearing and the record in the trial court that petitioner was not prejudiced by the late appointment of trial counsel and that counsel was not ineffective.

Notwithstanding the holding in McMann v. Richardson, 397 U.S. 759, 772, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (decided May 4, 1970), that the plea could not be made the subject of collateral attack in a federal court on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his counsel, the court below addressed the issue whether the plea was voluntarily and knowingly entered.

We have examined the record to determine whether it fairly supports the finding of the court below because there is no requirement that another hearing be held if fair support is found in the record.

The indictments charged that petitioner committed four armed robberies. There were at least eight counts growing out of the four robberies, four of which were the armed robbery counts themselves. There was at least one count charging that defendant carried a concealed weapon and there were three counts that he had committed assault and battery with intent to murder. In two of the robberies the victim had been shot and in one of them the victim had been hit on the head with an object. In two instances victims were beaten on the head with a gun as well.

We begin our examination of the record realizing that the trial judge commented during the trial of defendant on certain of the counts that defendant appeared to him to be a borderline mental case. At one point the judge said, "Well this is an example of the complete inability of the law to handle cases like this. This boy is obviously a borderline mental case. He has been. . . ." (the statement ends).

However, the record also shows that the trial judge ordered a presentence investigation during which it was determined that defendant was not incompetent but possessed an average IQ. He suffered an emotional problem according to the presentence report and the examining physician recommended sixteen years psychiatric treatment. The trial judge apparently followed this recommendation.

On the day of trial the petitioner did not plead guilty to all counts or bills. He pled guilty to the four bills charging armed robbery but pled not guilty to those charging assault with intent to murder. He said he thought that the latter charges were more serious than the robbery charges and "couldn't see pleading guilty to say that I was trying to kill anybody." (p. 75).

A trial was conducted on the not guilty pleas at which the victims testified, together with one Commonwealth witness who had been present in a store during one of the armed robberies. It would appear from the record that all four victims were present and testified. Before the trial according to defendant, a detective suggested that defendant tell the victims that he was sorry about the robberies and he did tell them this in the hall outside the courtroom but they were not friendly and called him names.

Before the trial had been completed the judge had seen the defendant's criminal record and since the trial was non jury it was recognized that this was im-

---

1. See Moore v. United States, 432 F.2d 730 (3d Cir. 1970) which nullifies the presumption and establishes the date of appointment to be the date on which the office of voluntary defender is appointed.

proper and the judge commented that he would find defendant not guilty which would make any error in the record inconsequential. In any event defendant was found not guilty of the charges of assault with intent to murder. During the trial one of the detectives testified that defendant had readily admitted all of the robberies and during the trial the defendant admitted all of the robberies. He even admitted the assaults.

The defendant was 26 years of age and had been incarcerated on at least three previous occasions as the result of guilty pleas. One of the periods of incarceration had been served at Camp Hill where defendant had been sent as a juvenile. One of the periods had been served at the Eastern Diagnostic and Classification Center. Apparently one had been served in Lancaster County.

The Voluntary Defender of Philadelphia, we repeat, had been appointed to represent defendant. Richard G. Schneider, of that office, who represented defendant at his pleas and during his trial was called to testify at the post-conviction hearing. He had reviewed the file of the Voluntary Defender preparatory to testifying and had the file in his possession. While his independent recollection of events was vague he testified at p. 24 as follows:

" . . . in this case he (defendant) had previously indicated his intention to plead guilty and I made it a practice to satisfy myself that the file supported the guilty plea and that the defendant was satisfied himself to make a guilty plea. I could only say that to the best of my recollection I followed that practice with Mr. Shank."

What did the file show? It showed that a Mr. Naulty (identified by Schneider as an investigator for the Voluntary Defender) visited the defendant in jail on May 5, 1958 (thirty seven days after defendant was wounded on March 28, 1958) and by May 8, 1958, had received a report from the Commonwealth regarding defendant's background. Mr.

Edelson, a Voluntary Defender, visited defendant on May 22, 1958, and made three pages of notes. It was then a week short of two months since defendant had been wounded. Another notation in the file made by one "Reg" (thought by Schneider to be Robert Gabriel of the defender's office) says this, "the defendant says if we contact detective Leon Pitz he will give us all cooperation re these charges."

Mr. Edelson's notes in the file contain the following narrative:

"On all of these times were [sic] I either hit, shot or otherwise injured anyone, I was under the influence of drugs. I am highly nervous. I got pills from someone and they are like benedrine. They eased my stuttering and that's why I took them, but in large quantities, four or more . . . they . . . it acts as a drug and gives me the courage or bravado to do physical violence."

In the three pages of notes there is reference to the various bills of indictment. There is a reference to the prosecutor on bills 499 and 501 and a woman witness on 499 and the word "guilty" appears. On bill 501 Edelson's note is as follows:

"On November 4, 1957, I hit prosecutor on the head with a soda bottle which I found nearby about 2:00 A.M. I intended to rob him and I took three hundred dollars from him."

According to Schneider these notes were in Edelson's handwriting and contained his impression of what defendant had told him. (It was agreed at the hearing (p. 28) that appointed counsel had no reason to believe that the notes were not made in the ordinary course of the Voluntary Defender's interview in preparation for trial).

As to bill 499 the notation is the following:

"On or about January 9, 1958, I used a gun intending to rob this woman who was the clerk in a real estate office in the area of 20th and Fairmount. Prosecutor said I pushed her

but I did not. I did shove another woman who came in to pay a bill. I merely pushed her to keep her in line. I intended to rob the store when I entered and I did so. I got about fifty dollars."

On bill 500 the notation is "guilty." Edelson's note says:

"I entered the grocery with intent to rob. I left without getting any money. I did not get $257.00 in cash."

On bill 502 there is no notation as to guilt but Edelson's note says:

"I intended to rob the prosecutor and got sixty dollars at 45th and Sansom Streets."

(These four bills, 499, 500, 501, and 502 are the bills to which defendant plead guilty.)

There was one page of notes made by Schneider on the day of trial which indicates that defendant went to trial on bills 503, 504, and 505. Edelson's notes indicate a not guilty plea was intended on bills 504 and 505 but a guilty plea was intended on bill 503. There was obviously a change of mind on bill 503. The Voluntary Defender's file was made a part of the record.

There is no mention in the file that defendant ever complained to Naulty or Gabriel (Reg) or Edelson about police coercion. He had the police in mind because he said detective Pitz would "give us all cooperation re these charges" but he never mentioned any over-reaching by the police. It rather appears that he had readily admitted the robberies and Edelson was convinced that he should plead his client guilty to the four charges. Schneider could scarcely have reached a different conclusion in view of the presence of the victims and the independent witness in the halls of the courthouse but Schneider went to trial on the charges on which defendant wanted a trial. These were the charges that defendant intended to murder his victims and defendant resisted those charges.

Schneider testified that from a reading of the file it was his purpose to give defendant a chance to tell his side of the story after the victims had testified as to each incident and of course defendant did testify during his trial.

There was no confusion in the trial judge's mind. He stated for the record:

"This defendant has pled guilty to robbery and to simple assault and battery and to carrying a concealed deadly weapon but he has pled not guilty to assault and battery with intent to murder."

The petitioner testified at the postconviction hearing. He said that he was told that he had no choice because he had signed statements and he then told the lawyer:

"All right I will plead guilty to the whole thing, the holdups, but I won't plead guilty to the attempt to kill because at that time I had an idea that the attempt to kill was a larger crime than the other crimes."

He stated that no one talked to him to explain that he could have a trial by jury or how much time he could get but petitioner was fairly candid. He said "Of course I assumed it was a chance that I could get a whole lot of time."

There are several elements which stand out in the record:

(a). Nowhere in the file of the Voluntary Defender is there any mention of police coercion.

(b). Defendant made a choice and plead not guilty to some of the counts, the ones he thought the most serious, and on these he did go to trial and he testified. It is obvious that he distinguished between the counts and made a choice. During his trial he admitted all of the armed robberies.

(c). Present in court there were eye witnesses to the crimes who were available to testify and who did testify.

(d). Defendant freely admitted his participation in the crimes to his own attorney on May 22, 1958, almost two months after his injury.

(e).  Although defendant appeared to be retarded mentally he possessed an average IQ.

(f).  Defendant had experienced previous incarceration after pleas of guilt, i. e., he possessed some previous experience in criminal court.

Under these conditions it is not surprising that the hearing judge found that defendant's statements lacked weight and that his pleas were voluntarily and knowingly entered.  It is not surprising that the district judge determined that another hearing was unnecessary and that the decision of the state judge was fairly supported by the record nor is it surprising that the court found that Mr. Schneider had rendered adequate service under the circumstances. We cannot say that there has been an abuse of discretion and will affirm.