**UNITED STATES of America ex rel.
Lonnie DAVIS, E–5076**

v.

**Robert L. JOHNSON, Superintendent, and
the District Attorney of Philadelphia
County, Appellant.**

No. 73–1545.

United States Court of Appeals,
Third Circuit.

Argued Jan. 18, 1974.

Decided March 20, 1974.

John J. Connors, Jr., Emas, Cohen & Connors, Philadelphia, Pa., for appellee.

Judith Dean, Asst. Dist. Atty., Milton M. Stein, Asst. Dist. Atty., Chief Appeals Div., Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., Philadelphia, Pa., for appellant.

Before SEITZ, Chief Judge, and HASTIE and ALDISERT, Circuit Judges.

ALDISERT, Circuit Judge.

■ This appeal by the Commonwealth of Pennsylvania requires us to decide whether late appointment of counsel in a state criminal proceeding in which appellee pleaded guilty on the second day of trial deprived him of his Sixth Amendment right of counsel. Magistrate Naythons reviewed the trial transcript and state post-conviction proceedings, including the state evidentiary hearing. The district court adopted the report of the magistrate and granted federal habeas corpus relief. No federal evidentiary hearing was held.

■■ These proceedings relate to a plea of guilty to three indictments of aggravated robbery entered by Lonnie Davis in the Criminal Court of Philadelphia County, Pennsylvania, on December 22, 1954. Pertinent to our consideration are Bills of Indictment No. 1033, covering a robbery of an American food store (ACME) on West Hortter Street on October 23, 1954; No. 1032, a robbery of a similar store on North Front Street on October 11, 1954; and Bill No. 1038, a robbery of a similar store on West Oak Lane on September 17, 1954. Because we are not reviewing factual determinations based on oral testimony at a federal habeas hearing, we are not restricted by the confines of the clearly erroneous rule as to the historical or narrative facts underlying the adjudicative find-

ings. United States ex rel. Binion v. O'Brien, 273 F.2d 495, 497 (3d Cir. 1959), cert. denied, 363 U.S. 812, 80 S. Ct. 1249, 4 L.Ed.2d 1154 (1960). We are thus free to evaluate the records from the standpoint of both historical and adjudicative facts. On ultimate constitutional facts the Supreme Court has placed a heavy duty upon the reviewing court. For example, on the question of the voluntariness of a confession, the reviewing court has the duty to examine the entire record and make an independent determination of the ultimate issue of voluntariness. This duty exists whether the court is reviewing district court denial of habeas corpus relief without an evidentiary hearing in reliance on a state court factual determination, Davis v. North Carolina, 384 U. S. 737, 741, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); or reviewing district court denial of habeas corpus relief after an evidentiary hearing. Boulden v. Holman, 394 U.S. 478, 480, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969). We perceive no logical reason why the same responsibility does not attach in reviewing a Sixth Amendment question of effectiveness of counsel as in a Fifth Amendment voluntariness question.

Davis' case came on for trial on December 21, 1954, in a consolidated action with three other defendants, Parris, McCray and Ricks. His counsel, John F. Hassett, a member of the Philadelphia Public Defender staff, requested a continuance: "Counsel have not had sufficient time and we have not interviewed the defendants and have not had time to prepare a defense. The defendants tell us at this time that they are not guilty on all charges."[1] The Commonwealth opposed the oral motion because the multiple cases had been postponed previously, and it was represented that a Commonwealth witness was very ill. It suc-

---

1. The magistrate apparently accepted at face value a version of the events of that date given by Davis at his post-conviction hearing on November 24, 1971—almost seventeen years later. Davis' petition for post-conviction relief was filed August 27, 1971. His

trial lawyer died September 13, 1971. *Cf.*, Rule 9 (Delayed or Successive Petitions), Rules Governing Habeas Corpus, Proposed Amendments to Rules of Practice and Procedure (January, 1973).

ceeded in its opposition to the motion for a continuance, and Davis stood trial on the multiple indictments emanating from the 1954 robberies. Police detective Harry P. McCann testified that Davis "admitted participating in the [October 23, 1954] holdup. . . ."; and that Davis "told us that he had thrown a gun on Lincoln Drive. Officers Kelly and McPeak went with the defendant Davis to Lincoln Drive . . . whereupon Davis showed him where he threw the gun. . . ." (Appendix 41a.) Both a cashier and a clerk for the Hortter Street store identified Davis as a participant in the October 23, 1954, holdup. Later a statement signed by Davis was read into evidence in which Davis gave graphic details how he participated in two of the three hold ups.[2]

Co-defendant Clifford Ricks, shot by the police during the Hortter Street robbery and diagnosed as a cancer victim upon being hospitalized for the gun shot wound, pleaded guilty and testified that Davis participated with him in all three robberies. Describing Davis' activity at the West Hortter robbery, he said: "Me and McCray we went and got the manager of the store and I went in and Davis went to hold some people in the car. When he opened the safe I heard some one at the door." (Appendix at 33a.) He testified that Davis was one of five participating in the Front Street robbery, stating that Davis entered the store with Ricks, Perry and McCray. As to the West Oak Lane robbery, Ricks testified Davis participated in the hold up.

Davis took the stand in his own behalf on the second day of trial. He denied participation in any of the robberies and contended that his signed confession was coerced by police beatings and induced by promises of immediate release. At the conclusion of his testimony, his defense rested. The McCray defense then opened with McCray entering a guilty plea to the West Hortter Street robbery and testifying that Davis participated in this robbery with him and the others.

At the conclusion of the Parris and McCray cases, Attorney Hassett requested and was granted a five minute recess to consult with his client. Upon resumption of the court proceedings, Davis entered a guilty plea to six indictments, all pertaining to the three hold ups.

What Davis admitted at sentencing is significant:

> The Court [Judge John Morgan Davis, now a district judge but then a Pennsylvania Common Pleas Court

---

2. Q. Mr. Davis, go on in your own words and tell us just what happened?
   A. All four of us, Ricks, Parrish [sic], McCray and myself left Parrish's [sic] house about 5 o'clock—5 :00 P.M., Saturday, 10–23–54—we went to this store, got there about 5 :30, stayed there until they closed. The manager came out went to his car, he must have forgot something, went back inside. Then myself, McCray and Ricks got out of the car, went to the door, the manager was coming out, Ricks threw the shotgun on him, the manager turned around and went back inside, Ricks and McCray followed. I walked down to the car where the lady and the boy was sitting, I told them to be quiet and nobody would get hurt. A chevrolet pulled up behind, a man got out walked to the car and asked what was the matter. The woman didn't say anything at the time, the man grabbed me with a gun in his hand, he told me to stand there and don't move, he walks to the drugstore at the corner, when I saw him go in I ran back to our car, got in the car and left with Parrish [sic].

   Q. Who had the guns during this robbery, last night?
   A. Ricks had the shotgun, McCray went in behind Ricks with a pistol, I had the .32 cal.

   Q. Were you involved in any other robberies, in American Stores?
   A. Yes, myself, Parrish [sic], McCray, Ned, Ricks & Meat, about a month ago. All six of us met on Columbia Ave. Me and Ricks were together, we met the others we got in Parrish's [sic] car went to an American Store in Oak Lane—identified as 816 W. Oak Lane Avenue—I was the look-out man. Ricks and Ned went inside, I'm not sure who else went in. I didn't hear anything that was said in the store.
   (Appendix at 90–91a.)

Judge]: Davis, you started out with a very good name.

Defendant Davis: Your Honor, I don't know what to say.

The Court: It would have been better for you to tell me the truth.

Defendant Davis: *I understand you* now. The onliest reason I didn't come out with it different ones talked to me about it when I was up there. When I was up in jail they would tell me if I didn't say what they want me to say —I mean I got it there, and I said a lot and I am sorry I said it, but some boys they told me what to say, and *the onliest reason that I accompanied Jack Ricks on these hold-ups* is because that I was living away from home, your Honor, and I haven's never been in the City before in my life before I came here.

.    .    .    .    .    .

The Court: And of course our Probation Department will be glad to help him to return to West Virginia and make it possible for him, after him having served the sentence that I am going to impose. If you told me the truth I might have been more lenient with you, because of your age, but regardless of that you were under oath and you were given one warning after another, but nevertheless you chose to tell me the story that no one could believe.

Mr. Filippone: And to say the police beat him.

The Court: *You weren't beaten at all, were you?*

Defendant Davis: *No sir,* your Honor.

The Court: Of course I resent very much a story told against our Police Force when they are doing their duty, to cast aspersions as he did against a Police Force that very rarely receives commendation. Usually it is the other way. I just don't think it is fair. On the basis of that I should send you to jail for an extra year just to make you tell the truth hereafter. However, his truth perhaps balances it up, and I am sure with the spirit of Christmas coming up from the court yard the officers would not like to see him sentenced extra time for that story. Am I right?

(Appendix at 186–189a.) (Emphasis supplied.)

Davis was sentenced to three consecutive sentences of 2½ to 15 years; or a total of 7½ to 45 years, effective from November 10, 1954. He was paroled on this sentence three times, and each time violated his parole. He was last returned to Superintendent Johnson's custody as a parole violator on February 9, 1972.[3]

Thus, we are confronted with a trial record in which Davis confessed to two of the three robberies, divulging specifics of the occurrences.[4] Although at one point in the trial he contended that his confession was coerced by the police, on the same day he made this contention he recanted, admitting he was not beaten by the police. Ricks, one of his co-defendants, described Davis' role in all three robberies. McCray, another co-defendant, corroborated both Rick's description of Davis' participation in the Hortter Street robbery as well as the details furnished the police by Davis

---

3. The record discloses that Davis was first paroled in 1962; that he was found to be a parole violator in 1964 and was reconfined to prison until 1967; that he violated parole again in 1968 and was reconfined until 1969, when he was again paroled. When he was last returned on February 9, 1972, the Pennsylvania Board of Probation and Parole set his maximum date at January 20, 2005.

   In 1970 he was arrested and later convicted of aggravated robbery of a deaf mute. · A sentence of 7½ to 15 years was imposed in February, 1972, for that offense, to commence at the expiration of the sentences for the 1954 offenses. This court has affirmed denial of habeas corpus relief on a claim emanating from the 1970 offense. United States ex rel. Davis v. Johnson, 491 F.2d 752 (3d Cir., 1974).

4. Other defendants either pleaded or were adjudicated guilty on these and other robbery charges during the consolidated trial.

himself.[5] And two witnesses identified Davis as a participant in one of the hold ups.

Applying the teachings of Moore v. United States, 432 F.2d 730 (3d Cir. 1970) (In banc), overruling United States ex rel. Mathis v. Rundle, 394 F.2d 748 (3d Cir. 1968),[6] the magistrate found "that relator has borne his burden of proving inadequate assistance of counsel. The Defender was not appointed until the day and moment of trial, which in itself raises a strong inference of prejudice. Further, relator has shown considerable actual prejudice from the late appointment. Particularly noteworthy in this regard was counsel's inability to attempt to locate and interview witnesses relator told him to establish a defense of mistaken identity. Under all the facts of this case, we must conclude that relator was deprived of effective assistance of counsel."[7] The magistrate did not meet Davis' second contention, that his guilty plea was not voluntarily and knowingly made.

Although the record does not disclose when the office of the Voluntary Defender entered an appearance for Davis and whether an investigation was conducted by that office,[8] it is clear that Attorney Hassett did request a continuance on December 21, 1954, for the reason that counsel had insufficient time to prepare a defense. Nevertheless, we find it difficult to endorse the reasons ascribed by the magistrate in recommending a finding of constitutional deprivation of the defendant's right to effective assistance of counsel.

■■■ Concededly prejudice may be inferred from a late appointment of counsel. But, in Moore v. United States, *supra*, we made it clear that it was in-

5. The stale post-conviction hearing held seventeen years later adds little. The record is replete with self-serving declarations by Davis, a resurrection of his own discredited charge of police harassment concerning the confession: "I was held at the police station for eighteen days in a cell and constantly harassed by the police. . . ." (Appendix at 198a.) The reality is that the Hortter robbery took place October 23, 1954. Davis was arrested at 5:30 am, October 24, 1954, and by 12:30 or 1:00 pm he had made an oral confession, and by 3:00 pm on that same date it was reduced to writing and signed by him.

6. Three Pennsylvania Superior Court judges dissenting in Commonwealth v. Davis, 222 Pa.Super. 430, 295 A.2d 187 (1972), relied on *Mathis*.

7. The magistrate stated:

It is uncontradicted and clear that: prior to the moment the case was called for trial, the Voluntary Defender's Office never interviewed the relator. No investigation whatsoever was undertaken. No efforts were made to determine if the alleged alibi given by relator was credible or truthful. As a result, the defender had no knowledge of the case prior to the day of trial, nor did he have a file containing the results of any investigation. He first learned the identity of the witnesses against relator and their relationship to the case when relator was confronted with their testimony, with no opportunity to prepare any worthwhile cross-examination, or study of the relator's confession. There is no indication on the record that the Defender used the overnight recess to investigate the circumstances surrounding the confession given by relator in order to determine its legality. Nor is there anything in the record that indicates that the Defender made any attempt to locate, investigate, and interview relator's witnesses in order to judge whether a defense of mistaken identification might be available. Even if defense counsel had been willing and free to devote the entire overnight recess to relator's case, it would have no doubt been impossible as a practical matter to locate the witnesses in such a short time.

8. We find no justification for the magistrate's statement "It is uncontradicted and clear that: prior to the moment the case was called for trial, the Voluntary Defender's Office never interviewed the relator." At the 1971 postconviction hearing Davis said: "I didn't see a *lawyer* until the day of my trial in the Courtroom. I was appointed a Public Defender." (Appendix at 197a.) (Emphasis supplied.) This is not to say that an investigator or case worker from the *office* of the Philadelphia Voluntary Defender's Office did not interview Davis, did not investigate the facts, or prepare the case for trial. The record is silent. *See* Moore v. United States, *supra*, 432 F.2d at 732–737 for a discussion of the operations of the Defender Association of Philadelphia.

cumbent upon the relator to demonstrate whether counsel's performance was at the level of "normal competency." While the ultimate question is not whether a defendant was prejudiced by counsel's performance, prejudice is evidentiary on the issue. *Ibid.*, 432 F.2d at 737. Thus, in United States ex rel. Taylor v. Rundle, 456 F.2d 1245, 1246 (3d Cir. 1972), we affirmed the district court's determination that the late appointment precluded the obtaining of witnesses, allegedly present at the scene, who "may have materially aided defendant in presenting a defense of mistaken identity." We held that defendant was deprived of the effective assistance of counsel because he had borne his burden of proving ineffective assistance of counsel. He proved that counsel was appointed on the day of trial and made a showing of considerable actual prejudice, not mere fanciful or speculative prejudice.

Assuming that a federal evidentiary hearing is not necessary under the circumstances, on federal habeas corpus the district judge, or the magistrate acting within the authority of the Magistrate's Act, 28 U.S.C. § 631, is therefore obliged to examine carefully the record at the trial and the post-conviction evidentiary hearing to ascertain if the relator has met his burden of proving counsel's failure to meet the level of normal competency. Here the magistrate observed: "No efforts were made to determine if the alleged alibi given by relator was credible or truthful." We are at a loss to understand the significance of this observation. If alibi witnesses were dredged up, their testimony would have been at variance with that of the clerk and the cashier, with Davis' ultimate unconditional plea of guilty to all three robberies and with his detailed confession as to two of the three robberies. When, seventeen years later, he decided to file a post-conviction petition

he did not make reference to an alibi. The magistrate also observed: "There is no indication on the record that the Defender used the overnight recess to investigate the circumstances surrounding the confession given by relator in order to determine its legality." We have heretofore observed that Davis confessed in open court that his original allegation of police beatings was a fabrication. Whether the Defender did or did not use the overnight recess in December, 1954 to investigate the circumstances simply cannot be gleaned from the record of the post-conviction hearing. The brute fact is that at the time of the post-conviction hearing the defense attorney was dead; it is most difficult to conjure how an account by the lawyer as to what he did in the December, 1954 overnight recess could possibly be forthcoming at the 1971 hearing since he had been dead for three months.

The magistrate further observed: "Nor is there anything in the record that indicates that the Defender made any attempt to locate, investigate, and interview relator's witnesses in order to judge whether a defense of mistaken identification might be available." There was no genuine mistaken identification issue as to Davis. He was placed at the scene of two robberies by his own words. He was placed in all three robberies by one co-defendant; at one robbery by two of his co-defendants; and at one robbery by two employees of the Hortter Street store. This hardly presents a case of mistaken identification.[9]

We have carefully examined the entire record, and even were we to assume that there was late appointment, we hold that relator has failed to prove that Mr. Hassett's performance was not at the level of normal competency. We also disagree with the magistrate's conclusion that "relator has shown considerable actual prejudice. . . ."

---

9. At his post-conviction hearing he testified that the only identification came from one witness who recognized his voice. When confronted with the fact that his co-defend-

ant Ricks identified Davis "as a person who went into various places with him and robbed," Davis incredibly responded that he did not recall Ricks had said that.

But this does not end the matter. We hold that the district court erred in not following the procedure mandated by us in United States ex rel. Johnson v. Russell, 444 F.2d 1177 (3d Cir. 1971), cert. denied, 405 U.S. 977, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972). There the petitioner collaterally attacked the guilty plea entered by him after completion of the Commonwealth's evidence on the grounds that he was inadequately represented by counsel at the time of entering the plea and that the plea was the product of inadequate representation by counsel during trial. Applying the teachings of the *McMann* trilogy [10] we held that in habeas corpus cases where the petitioner collaterally attacks the entry of his guilty plea on the advice of counsel, the threshold inquiry must be directed to the circumstances at the time of the entry of the plea.[11] If we find that the prisoner has demonstrated that there was a "serious dereliction on the part of counsel sufficient to show that the plea was not, after all, a knowing and intelligent act," then we must inquire further to determine whether there existed a prior constitutional deprivation. *Ibid.,* at 1178–1179.

"[T]he Court has made it clear that the validity of a guilty plea is not to be gauged by an examination of the admissibility of a confession or statement which may have, in part, prompted the plea. Rather, the inquiry must be directed to whether the plea was itself entered with the requisite understanding of its nature and consequences. And in this respect, the examination resolves into a determination whether the defendant received the effective assistance of counsel in reaching the decision to plead guilty: '[H]e is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act.' 397 U.S. at 774, 90 S.Ct. at 1450. . . . '[W]hether a plea of guilty is unintelligent and therefore vulnerable * * * depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases.' *Id.* at 770–771, 90 S.Ct. at 1448–1449." United States ex rel. Broaddus v. Rundle, 429 F.2d 791, 793–794 (3d Cir. 1970) (In banc).

Recently, in Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), the Court reaffirmed the principle recognized in the *McMann* trilogy, cautioned against our taking too restrictive a view of these holdings and emphasized the requirement of the two-fold determination.

■ Applying this principle to this factual complex we must initially focus on the question of competency of Davis' trial counsel at the time of entry of his plea. We have previously stated at length the evidence against Davis at the time he was advised to plead guilty. As to the historical facts which underlie the Davis' representation claim, the state

10. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ; McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) ; Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L. Ed.2d 785 (1970).

11. [T]he United States Supreme Court has limited the scope of inquiry in cases like this where the defendant has entered a guilty plea in a state criminal trial. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) ; Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). These cases hold that when a defendant pleads guilty upon the advice of competent counsel, he waives prior constitutional infirmities and "assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts." McMann v. Richardson, *supra*, 397 U.S. at 774, 90 S. Ct. at 1450. *See* Parker v. North Carolina, *supra*, at 796, 90 S.Ct. 1458. *Before we may examine the conduct of the trial before the entry of the plea*, we must find "serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." 397 U.S. at 774, 90 S.Ct. at 1450.
444 F.2d at 1178. (Emphasis supplied.)

post-conviction fact finder, after an evidentiary hearing, found against Davis:

> The defendant also contends that he was deprived of his constitutional right to representation by competent counsel. There is likewise no merit to that contention. In addition to the pre-trial statement, two of the defendant's co-felons testified against him. Under these circumstances Mr. Hassett's representation was competent.
>
> . . . .

Davis was represented by counsel at the post-conviction hearing; he testified freely and without restraint. The assistant district attorney testified to the best of his recollection. The defense attorney was dead. We have examined the record and have concluded that a federal evidentiary hearing was not necessary. Davis was afforded a fair and adequate hearing in the state court and the decision of that court is fairly supported by our examination of the record as a whole. 28 U.S.C. § 2254(d); Townsend v. Sain, 372 U.S. 293, 313–319, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); United States ex rel. Shank v. Commonwealth of Pennsylvania, 461 F.2d 61, 62 (3d Cir. 1972), cert. denied, 409 U.S. 1110, 93 S. Ct. 917, 34 L.Ed.2d 691 (1973); United States ex rel. Lawson v. Cavell, 425 F.2d 1350, 1352 (3d Cir. 1970). We hold, therefore, that Davis did not demonstrate that the advice he received from counsel was not within the standards set forth in *McMann*.

The judgment of the district court will be reversed and the proceedings remanded.

SEITZ, Chief Judge (concurring).

The Magistrate's report, approved by the district court, found that defendant was denied the effective assistance of counsel and that it was therefore unnecessary to decide whether the guilty plea was knowingly and voluntarily made. I think this approach is analytically unsound because it implies that the two issues, effectivenesss of counsel and voluntariness of plea, are of independent significance in a guilty plea context. In fact the only issue where a defendant has entered a guilty plea, is whether it was knowingly and voluntarily made. An attack on the effectiveness of counsel *in such a context* is relevant only insofar as it supports the claim that the plea was not voluntary; if a defendant is not properly advised of his rights and of the consequences of a guilty plea, the defendant's plea is said not to be voluntary.

A reading of the Magistrate's report shows that he dealt primarily if not exclusively with counsel's activities before the plea was entered. He should have been concerned, at least initially, with the record at the date of the plea. Was Davis denied the effective assistance of competent counsel *at the time of the plea?* United States ex rel. Johnson v. Russell, 444 F.2d 1177, 1179 (3rd Cir. 1971). Davis did not enter his plea until after the Commonwealth's case had been fully presented. Given counsel's knowledge of the strength of the prosecution's case, I agree with Judge Aldisert that there is no basis for saying that counsel's action in recommending a guilty plea was below the standard of normal competency.

Because Davis was adequately served by counsel when he entered his guilty plea, ordinarily no futher inquiry into the adequacy of representation during the trial phase of the proceeding would be needed. *Id.* In this case, however, the argument that counsel's performance was substandard can only be predicated on the claim that trial counsel's performance prior to the entry of the plea was so inadequate that it fatally flawed the competency of the advice to plead guilty. Assuming the propriety of this argument, *Id.* at 1179, n. 11, I note that Judge Aldisert has analyzed the record on this score, and I am in accord with his conclusion that counsel's performance was not below the normal competency standard.

I concur in the reversal.

HASTIE, Circuit Judge (dissenting).

The facts found by the district court, with adequate basis in the record, included the following:

"At the Commencement of the trial, the judge appointed a Voluntary Defender to represent the relator, who already with three others, was being tried for seven (7) aggravated robberies. The Voluntary Defender promptly asked for a continuance so that he could, for the first time, interview the relator, and prepare a defense. The request was denied. The relator testified as to his innocence, but after the introduction of a confession containing his signature, and after a co-defendant changed his plea to guilty and implicated relator, relator likewise changed his plea to guilty. . . ."

" . . . . .

" . . . the defender had no knowledge of the case prior to the day of trial, nor did he have a file containing the results of any investigation. He first learned the identity of the witnesses against relator and their relationship to the case when relator was confronted with their testimony, with no opportunity to prepare any worthwhile cross-examination, or study of the relator's confession. There is no indication on the record that the Defender used the overnight recess to investigate the circumstances surrounding the confession given by the relator in order to determine its legality. Nor is there anything in the record that indicates that the Defender made any attempt to locate, investigate, and interview relator's witnesses in order to judge whether a defense of mistaken identification might be available. Even if defense counsel had been willing and free to devote the entire overnight recess to relator's case, it would have no doubt been impossible as a practical matter to locate the witnesses in such a short time. The record reveals that the Defender consulted with relator for five minutes (page 154 trial transcript) in order to secure a change of plea to guilty with no inquiry by the Court as to whether the plea was voluntary, without duress, promises of lenience or whether in fact relator understood the facts to which he was pleading guilty . . . ."

We are bound by these factual findings and I believe the majority do not challenge them.

Thus, the record establishes that defense counsel, appointed minutes before trial began, had no opportunity whatever to prepare for trial on indictments that charged the accused with several separate robberies and put him in jeopardy of sentences that could have aggregated some sixty years and ultimately did aggregate forty-five years. In these circumstances, if the trial had proceeded to guilty verdicts it cannot rationally be doubted that the convictions would have been obtained through procedure that denied the accused due process of law. The critical question here is whether the pleas of guilty, as tendered and accepted during the second day of the trial, warrant a different result.

I agree with the majority that, under the rule of the *McMann* trilogy[1] the validity of a plea of guilty depends upon whether it was made voluntarily and knowingly. But the opinions in those cases also make it clear that an essential ingredient of a "knowing" or "intelligent" plea is that the accused shall have been informed and counseled by a lawyer who was in position to give him effective assistance.[2] Where counsel has had no opportunity whatever to investigate the case and, on the basis of his in-

1. Brady v. United States, 1970, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747; McMann v. Richardson, 1970, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763; Parker v. North Carolina, 1970, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785.

2. McMann v. Richardson, *supra*, 397 U.S. at 770, 771, 90 S.Ct. 1441; Brady v. United States, *supra*, 397 U.S. at 748, n.6, 90 S.Ct. 1463.

quiry, to determine whether the accused has a defense to any or all of the three unrelated felonies of which he stands accused, counsel simply cannot provide the knowledgeable assistance which must precede and inform a "knowing" and "intelligent" plea. This conclusion is impressively supported by our decision in United States ex rel. Taylor v. Rundle, 1972, 456 F.2d 1245, where counsel who advised a guilty plea had been appointed less than two hours before trial.

In the present case, Judge Packel of the Pennsylvania Superior Court, dissenting from the denial of state post conviction relief, perceptively observed that the "appointment of counsel under the facts of the instant case, coupled with the order to proceed immediately to trial, amounted in effect to window dressing to complete the conviction". 1972, 222 Pa.Super. 430, 433, 295 A.2d 187, 189. This observation was as valid for the time when counsel advised his client to pelad guilty as it was during the aborted trial. For however damaging the evidence at trial may have been, counsel, who was totally unprepared, was in no position to evaluate it, to cross-examine witnesses or to present any possible defense. In these circumstances, listening to the government's case against the accused put counsel in no better position, perhaps even worse position, to advise his client objectively concerning a plea than he had been at the beginning of the trial. Yet, the government's evidence, which could not have led to a valid guilty verdict because counsel had not had opportunity to test it or to investigate any aspect of the case, is now relied upon as enabling counsel to give his client adequately informed advice to plead guilty. In my view, the record amply supported the district court's conclusion that in fact and in legal contemplation the guilty plea was invalid because counsel could not give the accused informed assistance in the making of that decision.

Finally, the principal opinion leaves me with the disquieting impression that unwillingness to affirm the district court's grant of habeas corpus is bottomed upon the strong probability that the accused did in fact participate in the robberies to which his guilty pleas related. But the harmless error doctrine has no proper place where the right to effective assistance of counsel is the matter in issue. Mr. Justice Stewart's concurring opinion in Chapman v. California, 1966, 386 U.S. 18, 42, 43, 87 S.Ct. 824, 837, 17 L.Ed.2d 705 clearly states the applicable constitutional concept:

"When a defendant has been denied counsel at trial we have refused to consider claims that this constitutional error might have been harmless. 'The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.' Glasser v. United States, 315 U.S. 60, 76 [62 S.Ct. 457, 86 L.Ed. 680]. That, indeed, was the whole point of Gideon v. Wainwright, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799] . . . ."

I would affirm the judgment of the district court.