117 N.J. Super. 507 (1971)
285 A.2d 234
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALLEN L. ANDERSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 1971.
Decided December 27, 1971.
*509 Before Judges KILKENNY, LABRECQUE and LANE.
Mr. Arthur Penn, First Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, Attorney; Mr. Penn, of counsel and on the brief).
Mr. Gerard J. Di Nicola, Salem County Prosecutor, submitted a brief on behalf of respondent but did not appear at the oral argument.
*510 The opinion of the court was delivered by LANE, J.A.D.
Defendant appeals from a judgment of conviction of armed robbery. He was sentenced to the New Jersey State Prison for a minimum of 12 years and a maximum of 15 years for violation of N.J.S.A. 2A:141-1 and to a consecutive term of a minimum of 8 years and a maximum of 10 years for violation of N.J.S.A. 2A:151-5. Both sentences were made consecutive to a term that was being served by defendant in the Federal Penitentiary in Atlanta, Georgia.
Separate indictments were handed down by the grand jury against defendant, John Clyde Carr, Jr. and Dorian Mitchell Nichols charging each of them in the same language with a robbery while armed "from the person of Daniel D'Alonzo money of the Beneficial Finance to the amount and value of $505" on December 5, 1968 in the Township of Pennsville. The indictment against defendant was filed June 19, 1969.
At the time of the indictment and for some time before defendant was in the custody of federal authorities in Atlanta, Georgia.
On June 16, July 25, August 13, August 22 and August 28, 1969 letters were received from defendant requesting a speedy trial. On August 15 an application for the assignment of counsel was sent to defendant which was returned completed on August 25. On August 29 an attorney was designated by the office of the Public Defender to represent Anderson. On November 24 it was brought to that attorney's attention that he had also been designated to represent Dorian Nichols, who had indicated that he was going to plead guilty. Since that would create a conflict, X., Esq., was on December 4, 1969 designated by the office of the Public Defender as defendant's trial counsel. On the following day X. filed his appearance and wrote defendant advising him that the trial was scheduled for January 12, 1970 and asking him to forward "any and all information that you may have in reference to this case." X. first interviewed Anderson on January 12, 1970, the day of the trial.
*511 At the opening of the trial the prosecutor moved to consolidate the trial of the indictments against Anderson and Carr. At that time X. objected, stating that "I did not know of the involvement of  the alleged involvement of Mr. Carr or anyone else." He further advised the court that it was only within the last 20 minutes that he had seen the prosecutor's file.
Immediately thereafter and after the court had sent for the jury, X. said "I have just been advised by my client that he has never entered a plea to this indictment." When the indictment was read, X. stated that defendant did not wish to enter a plea on the grounds "that he has been deprived of his constitutional rights by his not being advised to the right to make a plea prior to this time. He was represented by counsel through the Public Defender's office in Camden. Counsel never advised him of the fact that he had a right for a pretrial discovery, that he had the right to the Grand Jury minutes, he was never brought up here for a plea to the indictment and so forth." Thereupon the court entered a plea of not guilty and immediately proceeded with the trial. No motion for an adjournment of the trial was made.
Daniel D'Alonzo testified that on December 5, 1968 at approximately 6:55 P.M. Carr entered the office of Beneficial Finance Company seeking a loan, giving a false name. Shortly after D'Alonzo began to interview Carr, a man entered the office and handed D'Alonzo a handwritten note stating that this was a hold-up, to put all the money in a brown paper bag and not to be difficult. The man was armed with a shotgun. Following a hearing on the admissibility of an in-court identification, D'Alonzo identified defendant as being the man who came into the office and demanded the money.
The State called as a witness Dorian Nichols, who was then in custody on another armed robbery charge. He had pleaded guilty to the December 5, 1968 robbery the day before he testified. He said that he with defendant and Carr had gone in Carr's automobile to Pennsville for the purpose *512 of carrying out a hold-up. Defendant had a sawed-off shotgun in his possession. They decided upon the loan company. After stopping the automobile Carr went into the loan company first. Thereafter Anderson entered. The money was divided three ways at the home of Anderson's sister. He was shown the note that D'Alonzo had been handed and said he had seen that note in the automobile. In fact, he had given Anderson the paper on which to write the note. He admitted that Anderson had a picture of himself and Nichols' wife. He denied that when he saw the picture he said that some day he was going to get Anderson. He admitted, however, that he did say that when he, Nichols, was arrested for this robbery.
Lt. Earl Minnor testified that a note and a paper bag which the robber had brought to the Beneficial Finance Company office to hold the money were turned over to the Federal Bureau of Investigation for fingerprints. He had in court with him two reports from the FBI. One report said that the note contained seven latent fingerprints, none of which were similar to Anderson's. A second report said that one of the latent fingerprints was Nichols'. He had failed to bring to court with him a report of the FBI of a comparison of Anderson's handwriting with the handwriting on the note.
Lt. Minnor testified concerning an oral statement made by Carr on March 14, 1969 shortly after his arrest based upon specific questions put to him. In that statement Carr said that he had no business with Beneficial Finance Company but had been there on two occasions. On the first occasion he used his correct name. Carr refused to say whether he had used his correct name on the second occasion. On both occasions there was somebody in his automobile with him, but he would not say who. Carr refused to say whether any of the other persons in his automobile had also entered Beneficial Finance. He said that he knew Anderson, but he would not say whether Anderson was in the automobile on December 5, 1968. He said that he knew Nichols. At that *513 point in the statement Carr refused to answer any further questions. X. made no objection to the admission of this statement nor any request for instructions to the jury as to its use.
Neither defendant nor Carr introduced any evidence.
Defendant argues that (1) the in-court identification by D'Alonzo was improper because it was based on a prior illegal out-of-court identification: (a) defendant was denied the right to assistance of counsel at the time of the pretrial identification confrontation, (b) the pretrial identification procedures denied defendant the right to due process, (2) defendant was denied his constitutional right to confrontation of witnesses because an out-of-court statement by a co-defendant was admitted on the State's case without effective deletion of all references to defendant (not raised below), and (3) defendant, who had first seen his trial attorney the day of the trial, should not have been forced to go to trial and the action of the trial court in making him do so denied him the effective assistance of counsel.

I

A
At the voir dire hearing before the in-court identification it was developed that on the night of the robbery D'Alonzo was unable to identify a photograph of Anderson from 25 to 30 photographs which were shown to him. Shortly thereafter Anderson's photograph alone was again shown to D'Alonzo. At that time he said that the photograph resembled the robber, but he was not able to make a positive identification from the photograph. On June 19, 1969 the investigating officer took D'Alonzo to the federal court in the Post Office Building in Camden for the specific purpose of seeing Anderson who was there for a plea. D'Alonzo testified that in the courtroom there were 10 to 15 defendants sitting in the jury box, some of whom were Blacks (Anderson *514 is a Black) and some of whom were approximately the same height as Anderson. D'Alonzo said he recognized Anderson as the robber as soon as he saw him sitting in the jury box before such time as Anderson's name was called in the courtroom. Notwithstanding, D'Alonzo was still in the courtroom when Anderson was called to appear before the judge and plead.
At the conclusion of the voir dire hearing the trial judge ruled:
I find that the identification procedure was not so suggestive as to give rise to a likelihood of an irreparable mis-identification. I find that with respect to the identification in the courtroom without having the defendant pointed out specifically and having been in company with a group of others that there was no suggestive  there was no undue suggestability with respect to the identification as was testified to. Your motion is denied.
No evidence of the out-of-court identification was introduced on the State's case. It did, however, come out on cross-examination.
Defendant argues that under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), he was entitled to the assistance of counsel at the time of the pretrial identification.
The applicability of Wade to pre-indictment situations has not been finally determined by our Supreme Court. See State v. Mustacchio, 57 N.J. 265, 269-270 (1970); State v. Matlack, 49 N.J. 491, 499, n. 1, cert. den. 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 606 (1967).
In State v Edge, 57 N.J. 580 (1971), the Supreme Court reversed a judgment of the Appellate Division on the grounds that the defendants had not objected to the identification testimony at the trial and that there was not plain error. In doing so, the court indicated that the application of Wade was not to depend solely on whether the identification was pre-indictment or post-indictment. Justice Jacobs said in dictum:
*515 * * * The situation differed sharply from Wade since here the pretrial identifications occurred within a day or two after the event while the investigation was still intensely under way and well in advance of any indictment or retention or assignment of counsel. * * * [at 586; emphasis added]
This court has held that counsel is required at a pre-indictment identification where defendant is under arrest and the police know he has an attorney. State v. Wilbely, 112 N.J. Super. 216, 219 (App. Div. 1970).
In other pre-indictment situations this court has held counsel was not required. See State v. Moore, 111 N.J. Super. 528 (App. Div.), certif. den. 57 N.J. 210 (1970) (pre-indictment identification one day after the crime during investigatory phase, before defendant had been arrested or taken into custody); State v. Thomas, 107 N.J. Super. 128 (App. Div. 1969) (an identification occurring 90 minutes after the crime, shortly after defendant was in custody, similar to an on-the-scene identification); State v. Satterfield, 103 N.J. Super. 291 (App. Div. 1968) (an on-the-scene identification).
Regardless of the distinction between pre-indictment and post-indictment identifications, where the out-of-court identification occurs during the investigatory phase before defendant is arrested or in custody, generally counsel is not required. State v. Ruggiero, 115 N.J. Super. 258, 261 (App. Div. 1971); State v. Moore, supra, 111 N.J. Super. at 532. Cf. State v. Royster, 57 N.J. 472, 480-482 (1971).
Under these cases we conclude that the critical factor is whether the identification was part of the investigation or whether it is part of the State's preparation for trial, after defendant has become the firm suspect.
The testimony of the police officer during the voir dire hearing indicated that the police had already focused on defendant as the suspect of the robbery. A photograph of defendant was included in the photographs shown D'Alonzo the night of the robbery. Shortly after that he was shown a single photograph of defendant. Six months after the *516 robbery D'Alonzo was taken to the federal court in Camden to make a "positive identification" of defendant. When Lt. Minnor asked D'Alonzo to come to the federal court, Minnor said something to D'Alonzo to the effect, "We think Allen Anderson did it, do you want to come up and see if this is the fellow?" On March 14, three months earlier, Lt. Minnor had specifically questioned Carr about Anderson. The conclusion is inescapable that at the time of the identification at the federal court the police were past the investigating stage.
Under United States v. Wade, supra, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, defendant was entitled to the assistance of counsel when he was exhibited to D'Alonzo for identification more than six months after the crime at a time when he was the firm suspect. This was a "critical confrontation." Id. at 227, 87 S.Ct. 1926.
The fact that the out-of-court identification occurred when defendant was being arraigned in the federal court is irrelevant. In fact, it rendered defendant incapable of attacking the identification at all because he, not being aware it was taking place, would have no reason to recall the circumstances of the identification. Additionally, he had no opportunity to observe the identifying witness and the police at the time of the identification. The important fact is that defendant, the primary suspect, in custody although of another authority, was not even aware that an out-of-court identification was taking place. The kernel of the holding in United States v. Wade, supra, can be grasped from:
Insofar as the accused's conviction may rest on a courtroom identification in fact the fruit of a suspect pretrial identification which the accused is helpless to subject to effective scrutiny at trial, the accused is deprived of that right of cross-examination which is an essential safeguard to his right to confront the witnesses against him. [388 U.S. at 235, 87 S.Ct. at 1937; emphasis added]
That defendant was not under indictment at the time of the out-of-court identification is of no significance. The indictment *517 was filed June 19 and the identification was made on June 19. One wonders whether the identification in fact preceded the State's presentation of the case to the grand jury.
Defendant was denied counsel at a time the United States Supreme Court has mandated that he was entitled to counsel under the Sixth Amendment. The identification of defendant by D'Alonzo was not harmless error. It was inadmissible unless it was based upon a source independent of the out-of-court identification.
Evidence of the out-of-court identification was not adduced as part of the State's case. As a matter of trial tactics it was brought out by defendant on the cross-examination of the State's witnesses. In view of the ruling of the trial court, the State was not afforded an opportunity to prove clearly and convincingly that the in-court identification was based on an independent source, an exception to the Wade rule. United States v. Wade, supra, 388 U.S. at 240-241, 87 S.Ct. 1926; Gilbert v. California, 388 U.S. 263, 272, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Such an opportunity should have been afforded. If the State proves clearly and convincingly that D'Alonzo's in-court identification was based upon the observations which he made of defendant at the time of the robbery, his in-court identification is admissible notwithstanding the out-of-court identification.

B
In view of the fact that we have held above that the in-court identification will not be allowed unless the State proves clearly and convincingly that it is based on a source independent of the out-of-court identification, we need not consider defendant's argument that the pretrial identification was so unduly suggestive as to deny him his right to due process.

*518 II
Defendant argues that the testimony of the police officer as to co-defendant Carr's statement without deletion of references to defendant denied him his constitutional right to confrontation.
In a joint trial of two defendants, an extrajudicial confession of one defendant is inadmissible against the other. The admission of one defendant's confession in such a trial has the potentiality for prejudice to a co-defendant implicated by that confession. State v. Young, 46 N.J. 152, 156 (1965); State v. Blanchard, 44 N.J. 195, 198 (1965); State v. Tassiello, 39 N.J. 282, 296 (1963). If such a confession is offered in evidence, there must be an effective deletion of all references to any co-defendant. State v. Young, supra, 46 N.J. at 159. Effective deletion has been defined in Young to mean "the elimination of not only direct and indirect identification of codefendants but of any statements that could be damaging to the codefendants once their identity is otherwise established." [46 N.J. at 159]. See also State v. Barnett, 53 N.J. 559, 564-565 (1969); State v. Broxton, 49 N.J. 373, 377 (1967); R. 3:15-2(a). Cf. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). This rule applies to oral as well as written statements. State v. Gardner, 54 N.J. 37, 42 (1969).
The purpose of the rule is to prevent the substantial risk that the jury may look to the incriminating, inculpating extrajudicial statements in determining a co-defendant's guilt, thus effectively denying defendant's Sixth Amendment right to confrontation of witnesses. Cf. Bruton v. United States, supra, 391 U.S. at 126, 88 S.Ct. 1620. The issue then is whether the reference in defendant Carr's statement was such a reference to defendant as to incriminate or damage him, requiring deletion. Clearly, direct reference to defendant by name in a statement detailing the criminal activity *519 is such a reference. See State v. Young, supra, 46 N.J. 152.
The identity of defendant had been "otherwise established" as being one of the culprits. Both D'Alonzo and Nichols had testified that Carr and Anderson were involved in the crime. Under State v. Young, supra, 46 N.J. 152, the references in Carr's statement to "somebody" and "other persons" in the automobile and to knowing Anderson should have been deleted.
Additionally, at no time was the jury instructed that the statement was admissible against Carr only. No request for such a charge was made by X.

III
Finally, defendant argues that he was denied effective assistance of counsel because he was forced to trial on the day he had first conferred with counsel.
Adequacy of representation can only be decided by an evaluation of the services rendered. A defendant is entitled to a standard of adequacy of legal services equal to the exercise of normal customary skill and knowledge. United States ex rel. Kent v. Maroney, 435 F.2d 1020, 1022 (3 Cir.1970); United States ex rel. Green v. Rundle, 434 F.2d 1112, 1113 (3 Cir.1970); Moore v. United States, 432 F.2d 730, 735, 736 (3 Cir.1970).
The issue of effective assistance of counsel when counsel first interviews defendant immediately before the trial is closely related to the issue of untimely appointment of counsel. Both suggest error because of the inability of counsel to prepare effectively. Late appointment of counsel is not per se prejudicial. Moore v. United States, supra, 432 F.2d at 735. Cf. Chambers v. Maroney, 399 U.S. 42, 54, 90 S.Ct. 1975, 1982-1983, 26 L.Ed.2d 419, 430 (1970). See United States v. Restaino, 405 F.2d 628 (3 Cir.1968), cert. den. 394 U.S. 904, 89 S.Ct. 1012, 22 L.Ed.2d 216 (1969). *520 Contra: Stokes v. Peyton, 437 F.2d 131, 136 (4 Cir.1970); Twiford v. Peyton, 372 F.2d 670, 673 (4 Cir.1967).
Our review of the record convinces us that regardless of the time of appointment X. was totally unprepared to represent defendant on this indictment. From the record we conclude that he had done nothing towards preparing a defense except to enter his appearance and write a letter to defendant who was incarcerated in Georgia. While no criticism can attach to his failure to interview defendant while he was thus confined, there was nothing to prevent X. from taking other steps towards preparing a defense. Normal customary skill and knowledge would have led X. to examine the prosecutor's file immediately. Had he done so, he would have become aware of the other indictments; he would have moved to obtain all FBI reports including the report of comparison of Anderson's handwriting with the demand note (in summation X. told the jury, "I didn't know these [the FBI reports] existed."); he would have interviewed Nichols and developed more fully the bias and prejudice of Nichols against defendant that was touched upon at the trial; he would have examined the grand jury minutes for whatever they might have disclosed; he would have obtained the 20 or 30 photographs that were shown to D'Alonzo. D'Alonzo testified that the photograph of defendant shown to him did not in fact resemble defendant. That photograph was never produced at the trial. It is apparent that there was a lack of communication between X. and the Public Defender's office, or he would have known that not only Anderson but also Carr and Nichols had been indicted for this robbery and that Anderson had not been arraigned, facts which he admitted to the Court he did not know. Additionally, although he had not seen the defendant until the day the case was called for trial, he never made an application for an adjournment.
Defendant was entitled to the effective assistance of competent counsel. He cannot be left to the mercies of incompetent counsel. It is one of our functions to assure that attorneys *521 representing defendants in criminal cases maintain proper standards of professional performance. McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763, 773 (1970).
In State v. Ercolino, 65 N.J. Super. 20 (App. Div. 1961), we said:
The right of an accused in a criminal case "to have the assistance of counsel in his defense" is granted by our Constitution, N.J. Const. (1947), Art. I, par. 10. When counsel is assigned at the request of a defendant he becomes bound to fully and faithfully serve the interests of his client within the boundaries of professional ethics. His duties include not only the extremely important matter of satisfying himself that the defendant understands the nature of the charge laid against him, and the consequences of a plea of guilty, but also of fully acquainting himself with the nature of the charge and the facts of the case so that he may informedly advise the defendant concerning the same. [at 27-28]
See also Moore v. United States, supra, 432 F.2d at 735; Hollingshead v. Wainwright, 423 F.2d 1059, 1060 (5 Cir.1970).
Considering all of the sequelae of X.'s failure to prepare, defendant was grievously prejudiced. Cf. Biruk v. Wilson, 50 N.J. 253, 262 (1967); State v. Orecchio, 16 N.J. 125, 129 (1954); State v. Zwillman, 112 N.J. Super. 6, 22 (App. Div. 1970), certif. den. 57 N.J. 603 (1971).
Here trial counsel so far departed from the standards of professional performance as to make defendant's trial a farce and a mockery of justice. Cf. State v. Edge, 57 N.J. 580, 593 (1971).
We are not concerned in this case with trial tactics of defense counsel, nor are we concerned with the faulty preparation for trial. From the record the only conclusion to be made is that here there was no preparation for trial. It makes no difference if the lack of preparation resulted from instructions to X. from the Public Defender. Defendant did not receive adequate assistance of counsel. Caraway v. Beto, 421 F.2d 636, 637-638 (5 Cir.1970).
*522 The judgment of conviction is reversed. The matter is remanded for a new trial.
LABRECQUE, J.A.D. (concurring in result).
While I am wholly in accord with the conclusion that this conviction must be reversed, I find myself unable to agree that United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), required that counsel be present at the time of defendant's pretrial identification by D'Alonzo. In the absence of an affirmative holding to that effect by our Supreme Court, I am not clear that Wade has applicability to a pre-arrest and pre-indictment situation such as the one we have here. Wholly aside, I would hold that D'Alonzo's out-of-court identification took place during the investigatory phase of the case. See State v. Ruggiero, 115 N.J. Super. 258, 261 (App. Div. 1971); State v. Moore, 111 N.J. Super. 528, 532 (App. Div. 1970), certif. den. 57 N.J. 210 (1970). The fact that the investigation may have "focused" on defendant as a suspect did not convert an otherwise investigatory viewing into something which it was not. In actuality the investigation was still under way. D'Alonzo had been shown a photograph of defendant shortly after the robbery but had declined to make a positive identification, saying only that "it appeared to be the man." Not until he observed defendant in person was he able to make a positive identification. His hesitancy in making it is explainable by his testimony that when the photograph was again shown to him after he had identified defendant in federal court, it "still" did not resemble defendant. Thus it would appear that the investigation was not completed and there was nothing on which to base an indictment until after he had picked defendant out of a group of 10 to 15 federal prisoners as the holdup man. The fact that they were prisoners being held by another jurisdiction on other charges was irrelevant  the result would have been no different had they been members of a baseball team or a Sunday School class. Since the case was still in the investigatory stage, counsel's presence *523 was not a prerequisite to a valid identification. Compare State v. Wilbely, 112 N.J. Super. 216 (App. Div. 1970), where defendant was under arrest and the police knew that he was represented by counsel.
I would also hold that the procedure surrounding D'Alonzo's identification of defendant was not unfair under the standards laid down in Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Such a claim is to be evaluated in the light of the totality of the surrounding circumstances. Coleman v. Alabama, 399 U.S. 1, 4, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); State v. Matlack, 49 N.J. 491, 498 (1967), cert. den. 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 606 (1967). On review of the trial court's finding we are required to determine from the entire evidence whether it could have reasonably concluded that defendant's identification by D'Alonzo was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. State v. Mars, 107 N.J. Super. 36, 39-40 (App. Div. 1969), certif. den. 55 N.J. 319 (1970). There was substantial credible evidence here to support the trial court's finding, and I am convinced that defendant was not thereby denied due process. State v. Johnson, 42 N.J. 146 (1964).
In all other respects I concur in the conclusions of the majority.