153 N.J. Super. 481 (1977)
380 A.2d 291
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
WILLIAM EARL PARKER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 12, 1977.
Decided November 1, 1977.
*484 Before Judges HALPERN, LARNER and KING.
Mr. Joseph P. Lordi, Essex County Prosecutor, attorney for appellant (Ms. Elaine Zamula, Assistant Prosecutor, of counsel and on the brief).
Mr. Stanley C. VanNess, Public Defender of New Jersey, attorney for respondent (Mr. Paul M. Klein, Assistant Deputy Public Defender, of counsel and on the brief).
KING, J.A.D.
We granted the State's motion for leave to appeal from the trial court's ruling in favor of defendant's motion to suppress a sawed-off shotgun as evidence in this criminal prosecution. The trial judge found the shotgun was seized by the police following "a fishing expedition not based upon reasonable cause." We agree and affirm.
Defendant was indicted for possession of a sawed-off shot-gun, in violation of N.J.S.A. 2A:151-41. The following circumstances led to the discovery of the gun by the police. On July 10, 1976, at about noon, Officer Mager of the Maplewood Police was dispatched to investigate a bank robbery in progress. He received radio information that two male suspects were identified leaving the scene in a blue and white vehicle. En route to the scene he spotted and stopped a vehicle occupied by two suspects fitting the radio descriptions. He asked the suspects to step out and the passenger Valentine admitted they robbed the bank. Defendant driver Parker was patted down and arrested. The vehicle was towed from the scene to the police garage, searched and inventoried pursuant to standard departmental procedure. Several personal items, including sun glasses, a belt, a hat, a jacket and a watch were found inside the automobile. An inoperable .45-calibre handgun replica with a plugged barrel was also removed from the interior of the car. During the inventory search the police could not gain entry into the locked trunk or glove compartment because no key was available.
*485 The car was owned by defendant's mother, Elaine Parker. Concerned about her son's arrest, she went to police headquarters later that day. She was told her car was impounded and could not be released. On July 15 she secured a written release of the car from the prosecutor's office and returned to police headquarters to obtain her vehicle. She signed an impound release sheet at police headquarters. Detective DeJohn stated that the only formalities for release remaining after she signed the impound release sheet were to settle the towing bill and give Mrs. Parker the keys. DeJohn took Mrs. Parker to the service station to settle the towing bill and thereafter to her apartment to obtain the keys because the police could not locate the defendant's keys.
On returning to the police garage DeJohn asked permission to search the trunk and glove compartment "for her protection" since the police could not gain entry previously. DeJohn wanted to be sure Mrs. Parker could not be blamed for transporting contraband. Mrs. Parker agreed to allow the police to open the trunk. She said she felt "more or less" compelled to open the trunk because "if I didn't they would hold my car." DeJohn opened the trunk and observed two satchels. Both bore tags with defendant's name. DeJohn then unzipped one of the closed satchels, without asking permission. He found the sawed-off shotgun inside a plastic bag in the satchel.
The police investigation of the bank robbery had disclosed no use of firearms. The police had no knowledge of any shotgun throughout their investigation of the crime. DeJohn agreed under cross-examination that he went into the trunk on a fishing expedition for anything he might find in the way of contraband and "also to protect the owner of the vehicle as I explained to her."
The State seeks to justify the search of the satchel on several grounds, i.e., (1) an inventory search, (2) a search pursuant to exigent circumstances for an instrument of the crime, and (3) a consent search. Evidence obtained *486 during a standard police inventory search is clearly admissible in a criminal proceeding. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); State v. Slockblower, 145 N.J. Super. 480 (App. Div. 1976), certif. granted 74 N.J. 255 (1977). See also, Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). The search of the satchel by Detective DeJohn does not fall within the inventory search exception. The inventory search was conducted and completed on the day of the arrest. The car remained in the police garage for five days. The vehicle was then released by the prosecutor and Mrs. Parker signed the police impound release sheet. She paid the towing bill and was ready to drive away when the request for a further search was made by DeJohn. The police had not thought it necessary to search the trunk or glove compartment during the five days the vehicle was in custody prior to its release, either for an inventory or any other reason. In Cooper v. California, supra, the United States Supreme Court upheld a warrantless search of a vehicle impounded for forfeiture proceedings. The search was conducted one week after seizure but several months before forfeiture. In Cooper the vehicle had not been released to the owner but was in the police garage under impoundment awaiting the forfeiture proceeding when the search was undertaken. Cooper does not control the situation before us.
The actual conduct of the police in this case belies the State's contention that the search of the satchel was justified because of exigent circumstances and to secure instruments of the crime. The police found no reason to search the glove compartment or the trunk during the impoundment, either for weapons, evidence or the fruits of the crime. When the search was conducted after the vehicle was released to the owner, it was undertaken for the alleged protection of Mrs. Parker and for general exploratory purposes,  not in connection with the pending criminal charge against defendant Parker. State v. McCarthy, 130 N.J. *487 Super. 540 (App. Div. 1974), relied upon by the State, is distinguishable. In McCarthy the police returned to defendant's car following defendant's arrest, but on the same day. They searched the trunk for evidence of the crime with which defendant had been charged when arrested. The search in McCarthy was conducted in a public parking area, on the day of arrest, at the scene of the arrest, and before the vehicle was impounded. The State here admits there was no reason to believe contraband was present at the time DeJohn opened the trunk and searched the satchel and that any warrantless search required by exigent circumstances could have been made at the scene of the arrest or in the police garage after the vehicle was impounded. See Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); State v. LaPorte, 62 N.J. 312, 317 (1973). We hold that any exigent circumstances which may have existed clearly expired by the time DeJohn decided to look in the trunk before Mrs. Parker drove away.
In State v. Johnson, 68 N.J. 349 (1975), our Supreme Court imposed a higher state constitutional standard[1] upon the prosecution when reliance was placed on consent in a noncustodial search situation than was previously required by the United States Supreme Court under Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Our Supreme Court held that if the State relies on consent "it has the burden of demonstrating knowledge *488 on the part of the person involved that he had a choice in the matter." State v. Johnson, supra 68 N.J. at 354. Here Mrs. Parker was not aware of any choice. Indeed, she articulated a sense of compulsion to consent, fearing that otherwise the police would reimpound the car. However, this defendant had no proprietary, possessory or participatory interest in the car and no standing to object to the trunk being opened. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); State v. Allen, 113 N.J. Super. 245, 249 (App. Div. 1970). Defendant owner does have standing as to the satchel and its contents. There was concededly no consent by anyone to search the zippered satchel owned by defendant. The detective admitted he had no reason to believe any criminal evidence or contraband was contained in the satchel. The warrantless search of the zippered satchel fits none of the relevant exceptions to the Warrant Clause of the Fourth Amendment or its state counterpart, and the motion to suppress must be granted. State v. Cohen, 73 N.J. 331, 345 (1977).
We believe a very recent opinion of the United States Supreme Court is most helpful in evaluating defendant's constitutional right to be free from a police search of his satchel in this case. In United States v. Chadwick, ___ U.S. ___, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), federal agents arrested defendant for narcotics traffic while he and several others were lifting a 200 pound footlocker into the trunk of his car. The footlocker and its keys were seized. The footlocker was removed to the federal building where it was opened an hour and a half after the arrest. Large amounts of marijuana were found inside. The court, in an opinion by Chief Justice Burger, held the warrantless search unconstitutional and suppressed the evidence. The court found that the search of the footlocker following the arrest and while it was in police custody fell within none of the *489 recognized exceptions to the Warrant Clause. The court rejected the government's argument that a person's luggage while in an automobile or in public is deserving of a diminished or minimum expectancy of privacy stating:
Luggage contents are not open to public view, except as a condition to a border entry or common carrier travel; nor is luggage subject to regular inspections and official scrutiny on a continuing basis. Unlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an automobile. United States v. Chadwick, [___ U.S. at ___, 97 S.Ct. at 2484]
The court also rejected the argument that the search of the footlocker was an extension of the custodial search made on arrest. The arresting officer may effect an appropriate custodial search to safeguard himself and prevent the loss of evidence, but once this exigency is past, the Warrant Clause of the Fourth Amendment is interposed between the curiosity of the police and the privacy of the citizen in his effects. As Chief Justice Burger noted:
However, warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is remote in time or place from the arrest," Preston v. United States, 376 U.S. [364], at 367, [84 S.Ct. 881, 11 L.Ed.2d 777] or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.
Here the search was conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody; the search therefore cannot be viewed as incidental to the arrest or as justified by any other exigency. Even though on this record the issuance of a warrant by a judicial officer was reasonably predictable, a line must be drawn. In our view, when no exigency is shown to support the need for an immediate search, the Warrant Clause places the line at the point where the property to be searched comes under the exclusive dominion of police authority. Respondents were therefore entitled to the protection of the Warrant Clause with the evaluation of a *490 neutral magistrate, before their privacy interests in the contents of the footlocker were invaded. [___ U.S. at ___, 97 S.Ct. at 2485]
We conclude that this warrantless search of defendant's zippered satchel in the trunk of his mother's car under the circumstances of this case was not constitutionally permissible. The search was not part of the inventory, not fraught with the exigency of the moment, and not consented to by defendant or his mother. Given Chadwick's recognition of the citizen's expectancy of privacy in secured luggage, and absent a valid exception to the warrant requirement, the judgment of the trial court was correct and is affirmed.
NOTES
[1] In State v. Johnson, at 353, the court noted that it had the right to impose higher standards under our State Constitution than is required by the Federal Constitution. Art. I, par. 7 of the New Jersey Constitution of 1947 provides that "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized." This language is taken almost verbatim from the Fourth Amendment of the Federal Constitution.