171 N.J. Super. 240 (1979)
408 A.2d 808
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ERNEST PACE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1979.
Decided October 31, 1979.
*243 Before Judges BISCHOFF, BOTTER and DWYER.
Arnold Budin, designated attorney, argued the cause for appellant (Stanley C. Van Ness, Public Defender, attorney).
*244 Thomas A. Penn, Deputy Attorney General, argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by BISCHOFF, P.J.A.D.
Defendant Ernest Pace, tried to a jury on two counts of a superseding indictment charging him with possession of a stolen vehicle, contrary to N.J.S.A. 2A:139-3, and possession of a pistol without a permit, contrary to N.J.S.A. 2A:151-41, was convicted and this appeal followed. We first consider defendant's contention that it was error to deny his motion to suppress evidence seized as a result of the warrantless search of the stolen motor vehicle he was operating and of his locked attache case located in the trunk of the car.
The proofs produced on the motion to suppress the evidence disclosed the following. Patrolman Richard A. Comfort was on routine patrol duty June 21, 1974, when he observed a motor vehicle southbound on Route 1 exceeding the speed limit and proceeding in the left lane while the right lane was open. After following the car for 1 1/2 miles he signaled the operator of the car to pull over and halt. The driver pulled to the shoulder of the road and stopped. The officer went over to the car and observed the driver, who was later identified as defendant, and a female passenger in the car. Defendant was unable to produce his driver's license, the registration or insurance papers for the car, explaining that he left them in Trenton and that his children had probably taken his wallet. He was also unable to produce any kind of identification. Comfort asked him and the passenger to step out of the car and proceeded to examine the vehicle in an attempt to discover ownership. He observed that the inspection sticker had been crudely altered and suspected the vehicle was stolen. He ascertained the vehicle identification number and radioed it and the license plate number to headquarters. The return call informed him the vehicle had been *245 stolen from Delaware. Returning to the vehicle, he placed defendant under arrest and handcuffed him.
By this time Sergeant Mauer had arrived at the scene and, in the presence of Mauer, Comfort conducted a "custodial or inventory" search of the vehicle in an attempt to ascertain the identity of the owner and determine whether there was any contraband in the car. Unable to find any indicia of ownership in the interior of the car (even after removing the rear seat) Comfort opened the trunk and found clothing and a locked attache case with the initials E.P. on it. When asked, defendant admitted the attache case was his but said he did not have the keys. Comfort "shook and jostled the attache case" in an attempt to open it. It flipped open and inside were some papers, a chrome plated .25 caliber Colt automatic and a small black holster. Five shells were in the magazine of the automatic.
Defendant moved to suppress the contents of the attache case prior to trial. In denying the motion the trial judge ruled:
(1) defendant had no standing to challenge the search since the vehicle was stolen and he had no proprietory or possessory right to the property in which the search was made, and
(2) the search was reasonable since the officer could rightfully search the stolen vehicle to ascertain who owned it and whether any contraband was present.
On appeal defendant challenges only the admission of evidence found as a result of the search of the attache case. He argues that under United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and State v. Parker, 153 N.J. Super. 481 (App.Div. 1977), the search of the attache case should be considered separate and apart from the search of the car.
The State, relying upon Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), submits that defendant lacked standing to contest the entire search since he had no proprietory or *246 possessory right to the property and no reasonable expectation of privacy in the vehicle.
It is well established that Fourth Amendment rights are personal rights which may not be asserted vicariously. Rakas v. Illinois, supra, 439 U.S. at 132, 99 S.Ct. at 424, 58 L.Ed.2d at 394; Brown v. United States, 411 U.S. 223, 230, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); Simmons v. United States, 390 U.S. 377, 389, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Rakas v. Illinois, supra, 439 U.S. at 134, 99 S.Ct. at 425, 58 L.Ed.2d at 395; State v. Parker, supra, 153 N.J. Super. at 488. And since the exclusionary rule attempts to effectuate the guarantees secured by the Fourth Amendment, only defendants whose Fourth Amendment rights have been violated may benefit from the exclusion of evidence. Rakas v. Illinois, supra, 439 U.S. at 134, 99 S.Ct. at 425, 58 L.Ed.2d at 395; Simmons v. United States, supra 390 U.S. at 390, 88 S.Ct. 967.
Traditionally, the requirement that an individual assert his own Fourth Amendment rights has been analyzed as a question of "standing." Rakas v. Illinois, supra 439 U.S. 128, 99 S.Ct. 421; see Simmons v. United States, supra, 390 U.S. at 389-390, 88 S.Ct. 967; Jones v. United States, 362 U.S. 257, 262, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).
But that approach to the issue was changed by the Court in Rakas v. Illinois. In Rakas, petitioners were convicted of armed robbery in Illinois state court. At trial the prosecution offered into evidence a sawed-off rifle and rifle shells that had been seized by police during a search of an automobile in which petitioners were passengers. Neither petitioner owned the car or asserted that he owned the rifle or shells seized. The Illinois appellate court held that petitioners lacked standing to challenge *247 the constitutionality of the search. The Supreme Court affirmed. 439 U.S. at 129, 99 S.Ct. at 423, 58 L.Ed.2d at 392.
In rejecting petitioners' claim that they had "standing" to challenge the search under the "target" theory of Jones, the Court held that questions of standing should be analyzed under the substantive question of whether a defendant has had his own rights violated by the search he challenges:
[W]e think the better the analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariable intertwined concept of standing. [439 U.S. at 139, 99 S.Ct. at 428.]
Under this approach a court must determine "whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." Id. 439 U.S. at 140, 99 S.Ct. at 429. See United States v. Williams, 589 F.2d 210, 213 (5 Cir.1979); United States v. Sanders, 592 F.2d 788, 791-792 (5 Cir.1979); United States v. Whitaker, 592 F.2d 826, 828, n. 2 (5 Cir.1979).
The critical question presented to us is whether the challenged search has violated defendant's legitimate expectation of privacy. Rakas v. Illinois, supra, 439 U.S. 128, 99 S.Ct. 421; Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
The State advances the argument that defendant had no reasonable expectancy of a right of privacy in any article placed in the stolen vehicle. Were we approaching this issue as one of first impression, we might be persuaded that this position has merit. However, the sweeping language of the United States Supreme Court in United States v. Chadwick, supra, and its progeny, especially Arkansas v. Sanders, ___ U.S. ___, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), establishes principles which mandate a contrary result.
*248 It is now well settled that searches of personal luggage stored in the trunk of a vehicle involve a greater intrusion on the owner's privacy than the mere search of the automobile. In United States v. Chadwick, supra, the court held that a warrantless search of a footlocker seized from the open trunk of a car violated the Fourth Amendment. 433 U.S. at 13, 97 S.Ct. 2476. Rejecting the government's argument that the locker was analogous to an automobile and no warrant was required, the Court found:
The factors which diminish the privacy aspects of an automobile do not apply to respondents' footlocker. Luggage contents are not open to public view, except as a condition to a border entry or common carrier travel; nor is luggage subject to regular inspections and official scrutiny on a continuing basis. Unlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an automobile. [Id. at 13, 97 S.Ct. at 2484.]
In Arkansas v. Sanders, supra, police, acting upon information received from an informant, stopped a taxicab after it left an airport, removed a suitcase from it, opened the suitcase and discovered marijuana. In affirming a judgment suppressing the evidence obtained by the warrantless search, the court said:
We conclude that the State has failed to carry its burden of demonstrating the need for warrantless searches of luggage properly taken from automobiles. A closed suitcase in the trunk of an automobile may be as mobile as the vehicle in which it rides. But as we noted in Chadwick the exigency of mobility must be assessed at the point immediately before the search  after the police have seized the object to be searched and have it securely within their control. See 433 U.S., at 13, 97 S.Ct. 2476, at 2484, 53 L.Ed.2d 538. Once police have seized a suitcase, as they did here, the extent of its mobility is in no way affected by the place from which it was taken. Accordingly, as a general rule there is no greater need for warrantless searches of luggage taken from automobiles than of luggage taken from other places.
Similarly, a suitcase taken from an automobile stopped on the highway is not necessarily attended by any lesser expectation of privacy than is associated with *249 luggage taken from other locations. One is not less inclined to place private, personal possessions in a suitcase merely because the suitcase is to be carried in an automobile rather than transported by other means or temporarily checked or stored. Indeed, the very purpose of a suitcase is to serve as a repository for personal items when one wishes to transport them.
........
In sum, we hold that the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations. Thus, insofar as the police are entitled to search such luggage without a warrant, their actions must be justified under some exception to the warrant requirement other than that applicable to automobiles stopped on the highway. Where  as in the present case  the police, without endangering themselves or risking loss of the evidence, lawfully have detained one suspected of criminal activity and secured his suitcase, they should delay the search thereof until after judicial approval has been obtained. In this way, constitutional rights of suspects to prior judicial review of searches will be fully protected. [Id. ___ U.S. at ___, 99 S.Ct. at 2593-2594, 61 L.Ed.2d at 244-246]
See also, State v. Parker, supra 153 N.J. Super. at 488-490; State v. Patino, 163 N.J. Super. 116, 121-125 (App.Div. 1978). While none of these cases involved a stolen car as the repository for a suitcase, valise or attache case, the language of the United States Supreme Court leads us to conclude that defendant's Fourth Amendment interests were adversely affected by the search.
We proceed to consider whether the search was reasonable under the circumstances and properly made under one of the exceptions to the warrant requirement. State v. Sims, 75 N.J. 337, 351 (1978). Since there was no showing of exigent circumstances, the State seeks to justify a search of the briefcase as (a) a legitimate search to determine ownership of the car and (b) as an inventory search.
While New Jersey courts have given police great leeway in searches undertaken to determine ownership of a stolen car, the police in this case clearly exceeded the permissible scope of that search. The officers testified that they thoroughly searched the interior of the car and then removed the rear seat in attempting to ascertain ownership. Further, they opened the *250 trunk of the car and defendant's locked briefcase, even though they knew it was his and that he did not own the car. Finally, the motives of the police must be seriously questioned since the information concerning ownership could have easily been obtained from NCIC records. We hold that in opening defendant's locked briefcase, the police exceeded the scope of a permissible search to determine ownership. Cf. State v. Patino, supra, 163 N.J. Super. at 128 State v. Parker, supra 153 N.J. Super. at 490; State v. Murray, 151 N.J. Super. 300, 308 (App.Div. 1977).
Nor can the opening of the locked attache case be justified on the basis of an inventory search. Considering the complete absence of any facts suggesting the briefcase contained contraband, explosives or instrumentalities which could place the police or others in the vicinity in danger, we see no reason why the case could not be inventoried as "one locked briefcase bearing initials E.P." State v. Slockbower, 79 N.J. 1, 12-13 (1979); State v. McDaniel, 156 N.J. Super. 347, 358-360 (App.Div. 1978).
The warrantless search of the briefcase violated defendant's reasonable expectations of privacy protected by the Fourth Amendment to the United States Constitution and the evidence seized as a result thereof should be suppressed. The judgment of conviction of possession of a pistol contrary to N.J.S.A. 2A:151-41 is reversed. The evidence obtained from defendant's locked briefcase is suppressed, and the case is remanded for further proceedings in the trial court on count III of the indictment.
There remains for our consideration defendant's conviction for receiving a stolen motor vehicle, contrary to N.J.S.A. 2A:139-3, and defendant's many assertions of error with relation to it. Defendant initially contends he was denied effective assistance of counsel, in violation of his rights under the Sixth Amendment to the United States Constitution.
Defendant was arrested for this present offense on July 20, 1974 and entered his plea in September 1976. The Office of the *251 Public Defender initially refused to represent defendant because he refused to sign an agreement to reimburse the Public Defender for services rendered. See N.J.S.A. 2A:158-16. However, on November 24, 1976, while awaiting trial on this indictment, Judge Barlow ordered a member of the staff of the Public Defender to represent defendant and indicated trial was set for December 6, 1976. The attorney met with defendant on one occasion prior to trial and at trial informed the court he needed more time to prepare. While the judge did not grant an adjournment of the trial, he did grant counsel an opportunity to examine the transcript of the grand jury proceedings, even though the material was previously available to counsel. Defendant was provided with discovery and several continuances were granted during trial so as to enable counsel to confer with defendant. Moreover, in considering this assertion of prejudice, we cannot ignore the claim made by defendant in support of his argument that he was denied a speedy trial, that he was ready much earlier to proceed to trial on this indictment.
The right to counsel afforded criminal defendants by the State and Federal Constitutions encompasses the right to effective assistance of counsel. State v. Mingo, 77 N.J. 576, 581 (1978). An otherwise valid conviction will not be reversed on appeal because of the ineffectiveness of counsel unless the inadequacy is of such magnitude as to render the trial a "farce or mockery." State v. Edge, 57 N.J. 580, 593 (1971).[1]
*252 Our review of this record discloses defendant received effective and adequate representation of counsel. While only two weeks were afforded counsel to prepare for trial, considering the nature of the charges against defendant and the discovery made available, this was ample time. Additional opportunity for counsel to confer with his client was afforded by means of several continuances during trial. The record demonstrates the trial was conducted in a fair, orderly and professional manner. Defense counsel made appropriate objections and arguments throughout the trial.
Defendant further contends:
(1) That he was denied his constitutional right to adequately present a defense. This contention is apparently based upon the argument that it was error to bar him from presenting Sergeant Davis as a witness to testify that Mr. Porter had operated the stolen vehicle before defendant and "had a propensity to have weapons and in general violate the law." This evidence was offered as an explanation for the presence of the gun in the trunk of the car. It was not an abuse of discretion for the court to bar the testimony of Sergeant Davis based on this offer of proof.
(2) That it was error to admit several teletypes into evidence, "which teletypes included the fact that the vehicle was stolen," since there was a dispute concerning whether the car operated by him was actually the car referred to in the teletypes and the computer printouts.
We disagree. The teletype which identified the stolen vehicle was admitted into evidence as a business record. There was a sufficient foundation established for its admission. Sears Roebuck & Co. v. Merla, 142 N.J. Super. 205, 207 (App.Div. 1976); Monarch Federal S. & L. Ass'n v. Genser, 156 N.J. Super. 107, *253 132-133 (Ch.Div. 1977); Evid.R. 63(13) cf. State v. McGee, 131 N.J. Super. 292, 296-298 (App.Div. 1974). Moreover, if it was error, it was harmless beyond a reasonable doubt. There was ample evidence, direct and circumstantial, from which the jury could find that the vehicle operated by defendant was in fact stolen.
(3) That, as plain error, the prosecutor improperly impeached his own witness by calling her a liar in summation. This contention is without merit. The prosecutor called the witness to prove one element in the State's case. Thereafter, defendant called the same witness to testify to an entirely different set of facts. It was with respect to this latter testimony that the prosecutor attacked the witness's credibility. We find his actions entirely proper. See State v. Ross, 162 N.J. Super. 47, 51 (App.Div. 1978); McCormick, Evidence, § 38 at 77-78 (1972); 3A Wigmore, Evidence (Chadbourn rev. 1970), § 909 at 700, § 913 at 704-705.
(4) That he was denied his constitutional right to a speedy trial. Defendant was indicted on June 21, 1974. A superseding indictment was issued June 29, 1976, and defendant's trial started December 10, 1976.
We find defendant's speedy trial argument to be totally devoid of merit. The delay between indictment and trial was largely attributable to defendant's trial on other charges in 1974 and 1975, and defendant never asserted his right to a speedy trial. Barker v. Wingo, 407 U.S. 514, 516, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); State v. Szima, 70 N.J. 196, 199-200 (1976), cert. den. 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976).
Defendant was incarcerated on unrelated charges from the day of his arrest on this indictment to the day of trial and did not suffer prejudice or deprivation of an opportunity to prepare his defense as a result of the charges involved in this appeal.
Defendant further complains of:

*254 (A) The denial of his application for leave to call character witnesses whose names were not furnished the prosecutor;
(B) For an evidentiary hearing into the substance of the jury's deliberations;
(C) Other evidentiary rulings.
We find all these contentions to be without merit. R. 2:11-3(e)(2).
Finally, defendant contends the sentence of three to five years consecutive to any sentence being served was excessive. Considering defendant's prior extensive criminal record, the sentence imposed was indeed lenient. There was no abuse of discretion. State v. Whitaker, 79 N.J. 503, 512-516 (1979).
The judgment of conviction for possession of a weapon is reversed; the evidence is suppressed and the matter is remanded for a new trial or other appropriate proceedings.
The judgment of conviction for possession of a stolen vehicle and the sentence imposed is affirmed.
NOTES
[1] This test has been subjected to criticism in other jurisdictions. Annotation, "Modern Status of Rule as to Test in Federal Court of Effective Representation by Counsel," 26 A.L.R.Fed. 218 (1976); United States ex rel. Davis v. Johnson, 495 F.2d 335, 340 (3 Cir.1974), cert. den. 419 U.S. 878, 95 S.Ct. 143, 42 L.Ed.2d 118 (1974); Moore v. United States, 432 F.2d 730, 737 (3 Cir.1970); United Staes v. DeCoster, 159 U.S.App.D.C. 326, 487 F.2d 1197 (D.C. Cir.1973). However, it remains the test here. State v. Anderson, 117 N.J. Super. 507, 521 (App.Div. 1971), mod. on other gds. 60 N.J. 437 (1972); State v. Fariello, 133 N.J. Super. 114, 123 (App.Div. 1975), rev. in part on other gds. 71 N.J. 552 (1976); State v. Bonet, 132 N.J. Super. 186, 191 (App.Div. 1975).